IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) No. 2:17-cr-00727-DCN |
| | ) |
| vs. | ) |
| | ) **ORDER** |
| PIERRE DESMOND MORGAN, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

The following matter is before the court on Pierre Desmond Morgan's ("defendant") pro se motion for compassionate release, ECF No. 54. For the reasons set forth below, defendant's motion is denied without prejudice.

## I. BACKGROUND

On December 19, 2017, defendant entered a guilty plea for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) ("count 1"). ECF No. 41. On May 2, 2018, the court sentenced defendant to be imprisoned for a term of 48 months and a term of supervision release for 3 years with certain conditions. ECF No. 50. On May 18, 2020, defendant filed his pro se motion for compassionate release pursuant to § 3582(c)(1)(A)(i), ECF No. 54, to which the government responded on May 21, 2020, ECF No. 55. On June 11, 2020, defendant supplemented his motion to include his administrative request for relief to Warden David Ortiz ("Warden"), ECF No. 56. On June 29, 2020, the government filed its response to defendant's supplemental brief, ECF No. 59, to which defendant replied through counsel on July 13, 2020, ECF No. 61. This motion has been fully briefed and is now ripe for the court's review.

1

## II. STANDARD

### A. Pro Se Complaints

Pro se complaints and petitions should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), cert. denied, 439 U.S. 970 (1978). Courts classify pro se pleadings from prisoners according to their contents, without regard to their captions. United States v. Winestock, 340 F.3d 200, 203 (4th Cir. 2003). A federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390–91 (4th Cir. 1990).

### B. Compassionate Release

Absent certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). 18 U.S.C. § 3582(c)(1)(A)(i) provides that an exception to this general rule applies where a defendant qualifies for a modification in his sentence due to certain age, health, or family circumstance factors, often referred to as compassionate release. United States v. Norris, 2020 WL 2110640, at *1 (E.D.N.C. Apr. 30, 2020). Prior to the passage of the First Step Act of 2018, Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018) ("First Step Act"), the Bureau of Prisons ("BOP") had exclusive dominion over filing a motion for compassionate release pursuant to § 3582(c)(1)(A)(i). United States v. Dowdell, 669 F. App'x 662 (4th Cir. 2016).

Section 603 of the First Step Act amended § 3582(c)(1)(A)(i) to divest control solely from the BOP and allows a defendant to request compassionate release from the sentencing court after exhausting his administrative remedies. United States v. Griggs, 2020 WL 2614867, at *3 (D.S.C. May 22, 2020) (quoting United States v. Edwards, 2020 WL 1650406, at *3 (W.D. Va. April 2, 2020)).

Specifically, the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, now provides in pertinent part:

> (c) Modification of an imposed term of imprisonment. —The Court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." Griggs, 2020 WL 2614867 at *3.

The commentary to § 1B 1.13 of the United States Sentencing Commission's advisory Guidelines Manuel provides criteria for determining whether extraordinary and compelling circumstances are present ("the Policy Statement"). U.S.S.G. § 1B 1.13,

comment. n. 1. These criteria generally concern the age, medical condition, or family circumstances of the defendant. Id. The commentary to U.S.S.G. § 1B1.13 provides four examples of what constitutes "extraordinary and compelling reasons" for a sentence reduction: (1) medical condition of the defendant; (2) age of the defendant; (3) family circumstances; and (4) a catch-all "other reasons" ("Application Notes"). Id. at app. note 1(A)–(C). Importantly, the Policy Statement and Application Notes only apply to motions filed by the Director of the BOP. United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). "The Sentencing Commission has not amended or updated the old policy statement since the First Step Act was enacted, nor has it adopted a new policy statement applicable to motions filed by defendants." Id. (internal citation omitted) (footnote omitted). Therefore, "[w]hile the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentencing reduction under § 3582(c)(1)(A)(i)." Id.

"Thus, courts may, on motions by defendants, consider whether a sentence reduction is warranted for extraordinary and compelling reasons other than those specifically identified in the application notes to the old policy statement." Id. at 579–80. Therefore, the determination of whether extraordinary and compelling reasons exist in a particular case is a question reserved to the sound discretion of the district court. See id. In addition to considering whether extraordinary and compelling circumstances are present, in order to determine that a reduction in sentence is warranted, a court must further consider the 18 U.S.C. § 3553(a) factors and determine whether the defendant is a

4

danger to the safety of another person or the community as provided in 18 U.S.C. § 3142(g).  U.S.S.G. § 1B1.13.

### III.   DISCUSSION

#### A.   Administrative Exhaustion Requirement

In defendant's motion, he requests the court grant him a waiver of the administrative exhaustion requirement and perform a substantive review of his motion because he would otherwise be subject to "irreparable harm or injury" because of the COVID-19 outbreak.  ECF No. 54 at 2–3.  The government argues that the administrative exhaustion requirement in § 3582(c)(1)(A)(i) is "at least a mandatory claim-processing rule" and the must be enforced because the government "'properly raise[s]' it."  ECF No. 55 at 4 (citing Eberhart v. United States, 546 U.S. 12, 19 (2005) (per curiam)).  As discussed above, the court may to grant "compassionate release" on a motion from a defendant if: (1) defendant has fully exhausted his administrative rights to appeal a failure of the BOP to bring a motion on his behalf, or (2) the lapse of 30 days from the receipt of such a request by the warden of the facility, whichever is earlier.  18 U.S.C. § 3582(c)(1)(A)(i).

Prior to the court ruling on whether the administrative exhaustion requirement in § 3582(c)(1)(A)(i) is waivable, defendant supplemented his motion with a copy of his administrative request for relief to his Warden.  ECF No. 56 at 4.  The government confirms that the BOP has received defendant's administrative request for relief and now concedes that defendant has met the administrative exhaustion requirement under § 3582(c)(1)(A)(i).  ECF No. 59 at 9.  ("[B]y the time the Court considers the motion, thirty days will have passed from Defendant's May 19, 2020 request to the warden,

therefore the Government is not objecting to Defendant's motion on jurisdictional grounds."). The court agrees with the parties that defendant has properly exhausted his administrative remedies and therefore will now begin its analysis on whether defendant has sufficiently proven extraordinary and compelling reasons for a sentence reduction.

### B.     Extraordinary and Compelling Reasons

Defendant contends that his underlying medical conditions make him acutely susceptible to COVID-19 and provide extraordinary and compelling reasons for a sentence reduction. ECF No 62 at 4. Defendant alleges that he is obese with a body mass index (BMI) of 45, has chronic hypertension, hyperlipidemia, atherosclerosis, and he has blindness in one eye and low vision in the other eye. ECF No. 59-2 at 20, 29, 54. The government confirms defendant's underlying medical conditions and concedes that, in light of COVID-19, defendant's severe obesity constitutes "extraordinary and compelling reasons" as expressed in § 3582(c)(1)(A)(i) and § 1B1.13, cmt. n. 1(A)(ii) of the Application Notes. ECF No. 59 at 9–10. The court agrees with the parties that defendant presents extraordinary and compelling reasons as required by § 3582(c)(1)(A)(i). Having found that defendant has met his administrative burden and presented the court with extraordinary and compelling reasons, the court must now consider the § 3553(a) factors and determine whether the defendant is a danger to the safety of another person or the community as provided in 18 U.S.C. § 3142(g), in order to determine if a reduction in sentence is warranted.

### C.     § 3553(a) Factors & § 3142(g)

Potential exposure to COVID-19 and the existence of one or more preexisting conditions does not necessarily provide a basis for a reduced sentence. Griggs, 2020 WL

2614867 at *7.  In order for the court to determine that a reduction in sentence is warranted, it must further consider the § 3553(a) factors and determine whether the defendant is a danger to the safety of another person or the community as provided in § 3142(g).  U.S.S.G. § 1B1.13.

The § 3553(a) factors instruct the court to "impose a sentence sufficient, but not greater than necessary" by considering, in part:

> [T]he nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; . . . to provide the defendant with needed medical care in the most effective manner . . . the kinds of sentences available; . . . the sentencing range establish[ed] for the . . . offense committed . . . as set forth in the [G]uidelines; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a).  Before granting a defendant's release, § 3142(g) instructs the court to set "conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community" by taking into account:

> [T]he nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . involves a minor victim or a controlled substance, firearm, explosive, or destructive device; the weight of the evidence against the [defendant]; the history and characteristics of the person, including—the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(a).  This case presents a very close question for the court.

### 1. Danger to Public Safety and Sufficient but Not Greater Than Necessary Punishment

The government argues that defendant would pose a danger to public safety if released. ECF No. 58 at 10. The government cites the BOP's conclusion that defendant's previous request for home confinement was rejected because he "scored at a high risk for recidivism" as evidence that the court should not grant relief in this instance. Id. at 10–11. The government also argues that that defendant's lengthy criminal history including his multiple convictions for violent crimes and/or weapons and his initial sentence being imposed at the lowest end of the Guidelines range demonstrate that defendant's current sentence is sufficient but not greater than necessary punishment. Id. at 11 (quoting 18 U.S.C. § 3553(a)).

However, defendant has also taken steps towards rehabilitation while incarcerated and has strong ties to his community. He is actively working toward earning his GED and has no disciplinary infractions since being imprisoned. ECF No. 61-1. Furthermore, defendant has served over 70% of his sentence. Id. at 2. Additionally, defendant was active in his church prior to incarceration and has a supportive family who would provide a safe home for him to return. ECF No. 61-2. While the court finds both parties arguments on these factors compelling, the court's decision is ultimately swayed by choosing the course of action that will "provide the defendant with needed . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). In this instance, the court must decide where defendant's exposure to the COVID-19 virus is most likely to be prevented to determine where defendant will be provided medical care in the most effective manner.

### 2. Providing Medical Care in the Most Effective Manner

Defendant's medical condition increasing his risk of mortal complications if he were to be subjected to the COVID-19 virus constitutes the extraordinary and compelling reason for the court to consider if a reduction in sentence is warranted. Therefore, the court is obligated to ensure that whatever decision it reaches assuages defendant's imperilment from exposure to this devastating disease. As explained above the court has considered all of the other statutory factors as required by U.S.S.G. § 1B1.13 to determine if a reduction in sentence is warranted, and has found the parties' arguments to be equally compelling. The remaining factor the court must consider is "the need for the sentence imposed . . . to provide the defendant with needed . . . medical care in the most effective manner," before concluding if a reduction in sentence is warranted. 18 U.S.C. § 3553(a)(2)(D). This requires a comparison of the severity of the COVID-19 outbreak at FCI Fort Dix in New Jersey, where defendant is currently incarcerated, and Colleton County, South Carolina, where defendant would reside if he were released.

Currently, FCI Fort Dix has five inmates and zero staff member who have active cases of COVID-19, www.bop.gov/coronavirus (as of July 15, 2020 at 3:19 P.M.), and the state of New Jersey's seven-day average has dropped from 832 to 304 daily cases between June 1, 2020 and July 15, 2020, https://www.nytimes.com/interactive/2020/us/new-jersey-coronavirus-cases.html. Meanwhile, between June 1, 2020 and July 15, 2020, in Colleton County, South Carolina, there has been a 361% increase in COVID-19 cases, https://www.colletoncounty.org/Data/Sites/1/media/covid-19/covid-19-7-15-2020.pdf, and the state of South Carolina's seven-day average has risen from 281 to 1,826 daily

cases. https://www.nytimes.com/interactive/2020/us/south-carolina-coronavirus-cases.html.

The differences in this data is stark and it leads the court to draw only one conclusion. It would not be prudent at this juncture for the court to release defendant to a location where the daily cases of COVID-19 is insidiously mounting when his current prison setting has very few active cases, the state where he is located is trending in a positive direction, and, as the government contends, there every indication that FCI Fort Dix is prepared to adequately treat any inmates who test positive for COVID-19. See ECF No. 58 at 10 ("At present, Defendant's medical condition is appropriately managed at the facility, which is also engaged in strenuous efforts to protect inmates against the spread of COVID-19, and would also act to treat any inmate who does contract COVID-19."); see also Wragg v. Ortiz, 2020 WL 2745247, at *3–*6, *19 (D.N.J. May 27, 2020) (detailing the implementation of the CDC's Action Plan for correctional facilities, the camp's conditions, and health screening protocols at FCI Fort Dix's, and finding that "even if the risk of . . . contracting COVID-19 is as serious as [plaintiffs] contend, [that] risk that is not unique to individuals in custody [at FCI Fort Dix].").

COVID-19's virulence to date has not only taken the lives of over 130,000 Americas and infected over 3 million more, but it has also wreaked havoc on all of society. Six months ago, the thought that an American citizen's well-being would be threatened with such regularity was unfathomable. Three months ago, the notion that a person would be at a greater risk for exposure to COVID-19 in South Carolina than in a prison in New Jersey was preposterous. Yet, here we are. If conditions at FCI Fort Dix

worsen or if the circumstances in South Carolina improves, defendant may refile his motion. However, at this time, the court dismisses defendant's motion without prejudice.

## IV.   CONCLUSION

For the reasons set forth above, defendant's motion is hereby denied without prejudice.

**AND IT IS SO ORDERED.**

 

 

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 17, 2020**
**Charleston, South Carolina**